[Crim. No. 728. Fifth Dist. Dec. 29, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALLEN SEASTONE, SR., Defendant and Appellant.

## COUNSEL

Richard M. Grossberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Talmadge R. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COAKLEY, J.**—This appeal is taken from a judgment of the Superior Court of Sacramento County entered upon a verdict of guilty of violation of Penal Code section 187, murder, in the first degree.

A grand jury indictment was filed on March 20, 1968, in which appellant was accused of murder, allegedly committed on February 16, 1968, in

Sacramento County. Appellant, represented by the public defender, entered a plea of not guilty. Following trial by jury, a verdict of murder, first degree, was returned. The penalty phase was tried by the same jury which, three days earlier, had returned the guilty verdict. The jury was unable to reach a verdict as to the penalty to be imposed. The court thereupon declared a mistrial as to the penalty phase, and discharged the jury. The court continued the matter for four days for the purpose of making its determination as to whether to impose a penalty of life imprisonment or to order a new penalty trial before another jury. On the day appointed for making the determination, the court fixed the penalty at life imprisonment.

The appellant does not question the sufficiency of the evidence establishing that he killed his nine-and-one-half-month-old son. To do so would be futile. The reporter's transcript reveals one of the most brutal and sadistic killings which has come to the attention of the members of this court in their many years of experience as trial and appellate court judges. Because no useful purpose will be served by recounting the brutal and revolting acts which resulted in the infant's death, we shall limit our discussion of the facts to those necessary to an understanding and disposition of the issues raised on this appeal.

I. *Admission of Photographs of the Child's Bruised Body as Tending to Inflame the Jurors.*

██ Over objection of defense counsel, photographs were admitted in evidence showing the terribly bruised condition of most of the infant's body, including face and private parts; and the infant's bloodstained garments. Appellant contends that the testimony of the physician who examined the child at the emergency hospital, and of the pathologist who later examined the child, so thoroughly described the child's bruised body, both externally and internally, that the photos served only to inflame the passions and emotions of the jurors, and, thus, unnecessarily prejudiced them against the appellant. Granted that the photographs were gruesome, that fact does not render them inadmissible. ██ The fact that gruesome photos may prejudice a defendant in the eyes of a jury does not, alone, render them inadmissible. Oral testimony can, and frequently does, stir a sense of revulsion and contempt for the one responsible for the battered condition of a victim's body, yet, such testimony is not inadmissible for that reason alone. There is a proverb attributed to the Chinese that "One picture is worth more than 10,000 words." (Familiar Quotations by John Bartlett (14th ed. 1968), published by Little, Brown & Co., p. 149.) It is as true today as when written by the ancients. The trial judge believed it to be so. In overruling an objection to the photographs, he said in part: "The jury will be much better able to understand this case, I am sure. I

know that I am much better able to understand this case by observing these pictures than I would be listening to the doctoı discuss the problems of the child in technical terms. . . .

"I get a much better impression of the testimony by looking at the pictures. I'm sure that will be true of the jury."

█ The question, therefore, is whether the photos have probative value and are offered and admitted for that purpose, or whether their primary purpose is to inflame the jury against the defendant. The question is one for the trial court, and, in the absence of a clear abuse of that court's discretion, the admission of such evidence will not be disturbed on appeal.

█ In *People* v. *Carter,* 48 Cal.2d 737, 751 [312 P.2d 665], the court expressed the rule in these words: "If the principal effect of demonstrative evidence such as photographs is to arouse the passions of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course be excluded. [Citations.] On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidentally arouse the passions of the jury. [Citations.] It is primarily for the trial court in the exercise of its discretion to weigh the importance of putting before the jury all that may reasonably assist them in the determination of guilt against the danger that they will substitute emotion for reason as the basis of their verdict." (See also *People* v. *Mathis,* 63 Cal.2d 416 [46 Cal.Rptr. 785, 406 P.2d 65].)

In the recent case of *People* v. *Bradford,* 70 Cal.2d 333, 341 [74 Cal. Rptr. 726, 450 P.2d 46], we find this observation: "It has been repeatedly held to be within the trial court's discretion to determine whether the inflammatory effect such exhibits might have upon the jury outweighs their probative value."

In *People* v. *Adamson,* 27 Cal.2d 478, 486 [165 P.2d 3], the court said: "Moreover, except in rare cases of abuse, demonstrative evidence that tends to prove a material issue or clarify the circumstances of the crime is admissible despite its prejudicial tendency. [Citations.]"

█ A material, indeed the principal, issue in the case was whether the killing was with malice. █ "Such malice may be shown by the extent and severity of the injuries inflicted upon the victim and by the condition in which the victim was left by her attacker. This is what the People sought to establish by these photographs. . . .

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Although the pictures of the body were admittedly gruesome, our examination of them convinces us that they not only were relevant but that they added something to the testimony of the pathologist. Whether the probative value of these photographs outweighed any possible prejudicial effect was a question to be resolved by the trial court in the exercise of its judicial discretion. In the instant case an able and experienced trial judge ruled that their probative value outweighed any possible prejudicial effect upon the appellant and also denied appellant's motion for a new trial. We are convinced that the trial court did not abuse its discretion in admitting the photographs." (*People* v. *Taylor,* 189 Cal.App.2d 490, 495-496 [11 Cal.Rptr. 480].)

■ Here, the photographs not only revealed injuries so brutally inflicted as to show an abandoned and malignant heart, a test for determining implied malice (Pen. Code, § 188), but the injuries to the child's penis and anus tended to support the prosecution's theory of sexual motivation for the crime. The trial court did not abuse its discretion in admitting the photos. The same is true with respect to the child's bloodstained garments.

II. *Examination of a Witness After Oral Arguments Have Commenced.*

■ After the prosecution and the defense rested, and the district attorney had made his opening argument and counsel for the defendant had made his argument, but before the district attorney commenced his closing argument, the trial was adjourned for the weekend. Before the trial resumed on Monday, the district attorney brought to the court's attention, for the first time, the fact that the appellant's wife had said that she, not the defendant, had inflicted the bites found on the infant's body. When the court convened, the judge informed the jury that a matter of importance had come to his attention during the adjournment, which he wished to bring to the jurors' attention. He then directed the district attorney to examine the appellant's wife. She had previously been called and had testified for the prosecution and for the defense. Upon being recalled at the court's direction, she testified that she, and not the appellant, inflicted the bites. Appellant, outside the presence of the jury, moved for a mistrial. The district attorney explained that he had known of the witness's statement previously, and had assumed that defense counsel knew of it and that he, the defense counsel, had not examined her on the point for reasons of strategy. He stated that the information was contained in the supplemental report of the coroner, which, based on past experience, he assumed had been furnished defense counsel as a routine matter. The motion for mistrial was denied, the court observing that the testimony should remove the inference that appellant inflicted the bites. The jury then returned to the courtroom, and the court admonished them that: "I suggest to you, ladies and gentle-

men, that the testimony you just heard is to be considered and weighed and evaluated the same as you would weigh and evaluate any testimony which is received in this case and by the same standards. The fact that it has been brought in out of context, as it were, should not cause you to weigh it differently. Thank you."

Appellant contends that he was prejudiced by the court's calling his wife and permitting her to testify after both sides had rested with respect to the introduction of evidence. We disagree for these reasons: (1) Had this testimony not been brought to the jurors' attention, and, after conviction, had the appellant learned that only the prosecution and its witnesses knew of the pretrial statement of appellant's spouse, appellant unquestionably would now be urging a new trial upon grounds of improper suppression of evidence. (2) It is settled that the order of procedure at the trial is within the discretion of the trial judge and must stand unless a clear abuse of discretion is shown. (Pen. Code, § 1093; Witkin, Cal. Criminal Procedure (1963), § 434; *People* v. *Berryman,* 6 Cal.2d 331 [57 P.2d 136]; *People* v. *Roberts,* 131 Cal.App. 376 [21 P.2d 449, 22 P.2d 25].) (3) No authority is cited, and we doubt that there is authority, suggesting impropriety or prejudice by what transpired here. While we have no way of knowing that the testimony was helpful to the appellant, neither can it be said to have harmed him. We hold that the error, if any, was not prejudicial.

### III. *Constitutionality of Penal Code section 190.1.*

Penal Code section 190.1 provides that where the offense charged is punishable by death, or, in the alternative, life imprisonment, there shall first be a trial to determine the guilt or innocence of the defendant. If found guilty, trial is then had on the penalty phase of the case. If the issue of guilt is tried to the court without a jury, the defendant is not entitled to have a jury try the penalty phase. In all other instances, including a plea of guilty, the penalty phase shall be tried by a jury unless waived. If the jury cannot agree on penalty, the statute authorizes the court to fix the penalty at life imprisonment (not death) or to impanel a new jury to fix the penalty at either death or life imprisonment.

Appellant complains, not of the fact that the court rather than a jury fixed the penalty of life imprisonment, but of an alleged absence of legislative or judicial standards to guide judge or jury in determining whether death or life imprisonment should be imposed. He contends that such lack of standards violates his Fourteenth Amendment rights. He relies on the dissenting opinion in *In re Anderson,* 69 Cal.2d 613 [73 Cal.Rptr. 21, 447 P.2d 117]. The same argument of unconstitutionality was rejected by a majority of the court in that case. It was again re-

jected in *People* v. *Aikens,* 70 Cal.2d 369 [74 Cal.Rptr. 882, 450 P.2d 258], and *People* v. *Varnum,* 70 Cal.2d 480 [75 Cal.Rptr. 161, 450 P.2d 553].

**IV.** *Was it Error to Call Appellant's Wife to Testify Without Advising Her of a Right to Counsel?*

■ Appellant contends it was prejudicial error. He cites no authority. His objection is without merit. Mrs. Seastone was not a defendant; she was not in custody; she was not charged with a crime; and she was not under investigation.

Even if Mrs. Seastone's rights under the Fifth and Sixth Amendments were not accorded her (there was no evidence or claim at the time of trial that they were not accorded her) that, of itself, would not render inadmissible her testimony against the defendant.

■ "Noncoercive questioning is not in itself unlawful, however, and the Fifth and Sixth Amendment rights protected by *Escobedo, Dorado,* and *Miranda* are violated only when evidence obtained without the required warnings and waiver is introduced against the person whose questioning produced the evidence." (*People* v. *Varnum,* 66 Cal.2d 808 [59 Cal.Rptr. 108, 427 P.2d 772]; see also *People* v. *Teale,* 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564].) ■ Further, a witness does not become incompetent to testify merely because his testimony may incriminate him. The privilege against self-incrimination is a purely personal privilege, solely for the benefit of the witness, which he may waive if he desires. It is deemed waived unless invoked. (*Rogers* v. *United States,* 340 U.S. 367 [95 L.Ed. 344, 71 S.Ct. 438, 19 A.L.R.2d 378]; *People* v. *Barker,* 232 Cal.App.2d 178 [42 Cal.Rptr. 651].) Of course, if the trial judge has reason to believe that a witness might be charged with a crime arising out of the events to which he might testify, it would be the court's duty to fully advise the witness of his privilege against self-incrimination (see *People* v. *Barker, supra*).

■ If appellant has in mind the privilege of a defendant against permitting his spouse to testify against him (Evid. Code, § 971), the answer is that such a privilege does not exist where one's spouse is charged with a crime against the other spouse or against a child of either (Evid. Code, § 972; *People* v. *Brown,* 262 Cal.App.2d 378 [68 Cal.Rptr. 657]).

### V. *Is the Court Required to Instruct the Jurors that They Must Agree Unanimously on the Theory Upon Which They Determine Guilt?*

It was the district attorney's position during the trial on the issue of guilt that the evidence was sufficient to return a verdict of murder, first degree, pursuant to Penal Code section 189, upon any one of three theories. They were (1) premeditated killing, (2) killing by torture, and (3) killing while committing or attempting to commit an act proscribed by Penal Code section 288, i.e., lewd and lascivious acts upon the body of a child under 14 years of age. The latter two theories are commonly referred to as felony-murder crimes and as homicides while perpetrating or attempting to perpetrate a felony.

In this part of his brief, appellant does not urge insufficiency of the evidence to justify a verdict upon any, or all, of the three theories. He contends only that, because the district attorney presented alternative theories of guilt, the court had a duty to instruct that, before returning a verdict of guilty, the jurors must agree, unanimously, upon one or more of the three theories. That is not the law.

In the leading case of *People* v. *Chavez,* 37 Cal.2d 656, 671 [234 P.2d 632], quoting from *People* v. *Sullivan,* 173 N.Y. 122 [65 N.E. 989, 93 Am.St.Rep. 582, 63 L.R.A. 353], the court held: " 'So in this case it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one; it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute." (See *People* v. *Nye,* 63 Cal.2d 166, 173 [45 Cal.Rptr. 328, 403 P.2d 736].)

### VI. *Did the Trial Court Err in Denying Appellant's Motion to Reduce the Degree of Murder from the First to Second Degree?*

Without either argument or citation of authority, the appellant first contends that the evidence does not support the verdict of first degree murder under any of the prosecution's three theories (*supra,* issue V). We disagree. There was abundant evidence to support the verdict upon each and all of the three theories. As indicated earlier, both because of the brutal and sadistic nature of the killing, and because the evidence established appellant's guilt beyond a purview of doubt, no useful purpose will be served by reviewing that evidence herein.

Relying on *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911], and the doctrine of diminished capacity therein enunciated,

appellant next contends that the evidence establishes that he did not have sufficient mental capacity to form the specific intent essential to a conviction of first degree murder. ■ Briefly stated, the doctrine of diminished capacity, as applied to a charge of murder, proscribes a conviction of murder in the first degree if, at the time of the offense, the defendant was incapable of acting with malice aforethought, or with premeditation and deliberation, whether such mental condition was caused by intoxication, trauma, or mental disease. (See *People* v. *Conley, supra,* 64 Cal.2d 310; *People* v. *Henderson,* 60 Cal.2d 482, 490 [35 Cal.Rptr. 77, 386 P.2d 677].) ■ The evidence on that aspect of the case follows. The defendant was 25 years of age at the time he committed the crime charged; he had completed the eighth grade of schooling; he had difficulty finding employment; he had received a head injury in a car accident in 1963 or 1964, and sometime prior thereto had had an epileptic seizure. On the night prior to the killing, he had not slept because of a toothache; on the morning of the crime he had dental work done and was in pain; he had consumed numerous pills of various kinds, both on the day of the killing and over a period of several days prior thereto. A criminologist called by the state identified all the pills as being vitamin tablets, iron tablets or aspirin. None contained any dangerous or narcotic drugs. Defendant testified that on the day of the killing he consumed a total of 10 or 15 beers and two shots of whiskey. He testified that he could not recall any of the circumstances surrounding his son's death, yet, he recounted the events of the entire day, both preceding and following the killing, with marked particularity. With reference to his consumption of alcohol, the defendant testified that about three hours preceding the killing he had gone to the police station to report that a pawn shop had refused to return a television set to him, because, according to the pawn shop broker, the appellant was "too drunk." The television had been left at the pawn broker's by appellant's father-in-law. The officer to whom the report was made testified that he was unsuccessful in explaining to the appellant that his father-in-law, and not the appellant, must present the ticket to redeem the set. He testified further that on putting his face closer to the appellant's head he smelled alcohol on his breath and suggested to the appellant that he go home and sober up. In a report filed a week later, the officer wrote that appellant had been drinking when he reported the T.V. incident. This officer was called on behalf of the appellant, and on cross-examination he testified that the appellant's speech and manner of walk appeared normal. A neighbor who had driven appellant to the pawn shop was called on behalf of appellant. On his direct testimony, and on cross-examination, he testified that he smelled alcohol on appellant's breath; that he could tell that appellant had been drinking some but not that he was drunk; that appellant told him he had had two beers; that he couldn't recall anything unusual

to indicate that appellant had been drinking, other than the fact that he smelled liquor on his breath. The officer who investigated the offense, and who accompanied the appellant and his child to the emergency hospital, testified that appellant did not appear to be intoxicated, that he did not smell of alcohol, that his speech was normal and responsive, and that appellant had no difficulty dressing himself and carrying his child down the stairway to the car.

A psychiatrist, called by appellant, testified that he had examined appellant on two occasions following the offense; that appellant could distinguish between right and wrong and understood the nature of his act, but that his ability to do so was impaired by alcohol and drugs; that by reason thereof he did not harbor malice aforethought, and that he did not premeditate, deliberate or form an intent to kill. The witness acknowledged difficulty in reconciling appellant's ability to relate in detail all other events of the day with his inability to recall the killing itself. The doctor expressed the opinion that appellant was conscious when he killed the child, basing his opinion on the fact that "he (appellant) can recall things clearly just up to the time of this event and immediately following the event . . . I got no information from him about the event. Whether he couldn't remember it or whether he didn't want to tell me, I couldn't say." He testified that the appellant was "a terribly upset, frustrated, angry individual," and acted in rage, all relating to conditions surrounding his earlier life and his present inability to obtain employment; and that the alcohol consumed on the day in question loosed the emotions which, theretofore, he had managed to suppress.

The jury was thoroughly instructed on the doctrine of diminished capacity, as it was on all other aspects of the case. Appellant does not contend otherwise. His contention is that the court should have granted his motion to reduce the degree of the crime from first to second degree. We find little support for appellant's contention. ▮ Although several witnesses testified that appellant smelled of alcohol, none found his speech, walk or manner other than normal. His memory of events preceding and following the killing was excellent. His alleged lapse was limited only to the brief period that he was performing the felonious acts. Even the psychiatrist, on whom he depended to establish diminished capacity, could not account for his lapse of memory. And, inferentially, the psychiatrist admitted that the appellant could be fabricating the memory lapse. The doctor's opinion of diminished capacity was based largely on the quantities of alcohol and drugs which the appellant, alone, testified as having consumed. There was no independent evidence to support appellant's testimony in this respect.

If the jury chose not to believe the appellant in this regard, as it had

a right to do, then there remained little to support the doctor's opinion, and that little was further diluted by the independent testimony that the so-called drugs which the appellant had told the doctor he consumed, and on which the doctor's opinion was based, in part, were, in fact, only vitamin pills and aspirin. It is apparent that the jury concluded that the reasons relied on by the doctor for his opinion of diminished capacity did not exist. Having reached that conclusion, the jurors then applied the instruction given them by the court to the effect that they could give the opinion only such weight as they deemed it entitled to in the light of the reasons assigned to support it, and they could disregard it entirely if they found it unreasonable. (CALJIC No. 56 (1967 Rev.), as given.) In our opinion, rejection of the doctor's opinion of diminished capacity and the resultant verdict of first degree murder was reasonable, and we find no reason to disturb it or the action of the trial court in denying the motion to reduce the degree of the crime.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.