[No. AO15745. First Dist., Div. One. May 5, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS MIZCHELE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Joan W. Howarth, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, Acting P. J.**—Defendant Jesus Mizchele was convicted on a jury's verdicts of the second degree murder of his wife, Nawassha, by use of a firearm, *and* of possession of a concealable firearm by one previously convicted of a felony. His appeal is from the judgment under which he was sentenced to state prison.

For the reasons we now state, we have concluded that the judgment must be reversed.

I. The first of the appeal's contentions of error follows: "The trial court's exclusion of evidence of the victim's violent history constituted reversible error."

Evidence adduced at the trial established the following factual context.

On the evening of the homicide, defendant and his wife Nawassha were having a heated and acrimonious argument. Defendant had been drinking and both parties were manifestly emotionally upset. The argument continued, apparently for hours, and during its course defendant made threats to kill Nawassha and

had directed such epithets toward her as "bitch" and "motherfucker." There came a time when a shot was heard, and Nawassha was observed dying, or dead. The gun which had been fired belonged to Nawassha. No witness had observed its firing.

Defendant testified on his own behalf to the following. He denied any threats to kill Nawassha, but admitted some of the expletives. He knew she had a gun in the pocket of her jacket which had been thrown to the floor, and he was fearful that she might use it. He "had problems with that gun and her before." She had kicked "the front door in," and "she pulled the gun on me, you know, and messed up the house, the whole place and the police arrested her." He picked up the jacket from the floor and removed the gun. Somehow, accidentally, the gun was discharged and he heard Nawassha say, "I'm shot." He had no intent to shoot her.

Following defendant's testimony his attorney, Mr. Hooker, out of the jury's presence, made an offer of proof as shown by the following proceedings.

"Mr. Hooker: Your Honor, what we're trying to do, of course, is offer testimony through the probation officer and other people to show specific acts that the victim in this case, specific acts of aggression that she's committed in the past.

"The Court: Like down in San Diego and this sort of thing?

"Mr. Hooker: Yes. Like the fact that she stabbed her daughter in the past, the fact that she has kicked the door in up here in Oakland, the fact that she has pulled the gun on the defendant in the past. I have an independent witness as to that and I feel that that is relevant because I feel that at the time that Mr. Mizchele took the jacket with the gun in it, he was doing that so he would be able to take the gun away from her so that the gun could not be used against Mr. Mizchele. Mr. Mizchele knew that she had used acts of aggression in the past. . . . He knew that she had pulled the gun on him before he was afraid. . . .

"The Court: Well, I don't think there is any self-defense here. There is no act of aggression by her. Is that what you want it for, because you contend this is self-defense?

"Mr. Hooker: I contend that it's—it's a self-defense case from that standpoint. He's taking the gun away from her to protect himself and as he's taking the gun away from her to protect himself, he knows she's committed acts of aggression in the past, the gun accidentally goes off. . . .

"The Court: Well, it's the court's opinion that I have read the cases you submitted, you kindly sent them in and I have looked at them and each one of them involves a different factual situation. I think on the state of the record here on what's been testified to that this evidence is not admissible and on the offer of proof that you made, is not admissible.

"Mr. Hooker: Well, just to clarify, your Honor, what are you saying would not be admissible?

"The Court: The probation department investigation report or the testimony of the probation officer as to her character or any information he had from her specific acts of aggression."

The offer of proof was rejected as indicated, and the proffered evidence was not allowed. Those rulings are the basis of the instant contention.

■ The trial court and prosecutor at the trial, and the Attorney General on the appeal, have apparently opined that *only* "where self-defense is in issue, evidence of prior assaultive conduct on the part of the victim" will be admissible.

We disagree.

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) And: "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

It will be seen that the principal issue of the trial was whether the gun, according to the uncorroborated testimony of defendant, had been *accidentally* fired. The evidence before the jury, that defendant had knowingly retrieved the gun from the pocket of the jacket on the floor with an apparent purpose to use it as a weapon, tended strongly to discredit the testimony of his intent not to use it. Evidence tending to establish a purpose other than to use it as such a weapon would, if believed by the jury, manifestly support his credibility and therefore be relevant under Evidence Code section 210.

We consider now whether the proffered evidence's rejection was "as otherwise provided by statute." (See Evid. Code, § 210.) (The only conceivably related statutes made known to us are Evid. Code, §§ 1100, 1101 and 1103.)

Evidence Code section 1100 states: "*Except as otherwise provided by statute,* any otherwise admissible evidence (including evidence in the form of an opinion, evidence of reputation, and evidence of specific instances of such per-

son's conduct) is admissible to prove a person's character or a trait of his character." (Our italics.)

Evidence Code section 1101 recites, as relevant: "(a) Except as provided in this section and in Sections 1102 [here patently inapplicable] and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion. . . . (c) *Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness.*" (Our italics.)

And Evidence Code section 1103, in pertinent part, asserts: "(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is: (1) *Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character. . . .*" (Our italics.)

We are of the opinion that these statutes constitute no barrier to use of defendant's proffered but rejected evidence.

We are further of the opinion that defendant had a *constitutional right* to present such material and relevant evidence in his favor, as was not otherwise disallowed by statute. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." (*Chambers* v. *Mississippi* (1973) 410 U.S. 284, 302 [35 L.Ed.2d 297, 312, 93 S.Ct. 1038].) "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." (*Washington* v. *Texas* (1967) 388 U.S. 14, 19 [18 L.Ed.2d 1019, 1023, 87 S.Ct. 1920].)

It may not reasonably be said that the error found by us is harmless. We think it "probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

We have in no way passed upon the weight or probative value of the proffered evidence. Such a determination is committed by law to the trier of fact, here the jury. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738].)

II. Defendant also contends that: "The trial court committed reversible error by improperly instructing the jury with CALJIC No. 2.06."

■ The jury were instructed with a variation of CALJIC No. 2.06, as follows: "If you find that a defendant attempted to suppress evidence against him—I'm sorry—if you find that a defendant attempted to suppress evidence against himself in any manner such as by destroying evidence, such attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, such evidence is not sufficient in itself to prove guilty and its weight and significance, if any, are matters for your consideration."

Some of the trial's evidence tended to establish that after the shooting, defendant placed the homicide weapon in a shoe box in a closet. From the evidence the jury might reasonably have found a *suppression,* but not a *destruction,* of evidence. Upon a retrial such an instruction, if given upon the same evidence, should be modified accordingly.

III. The remaining contention of defendant is that: "Appellant's conviction of violating Penal Code section 12021 must be reversed because he was not advised that he was waiving his right of confrontation when he admitted a prior conviction."

Penal Code section 12021 proscribes possession of a concealable firearm by one previously convicted of a felony. In the case at bench defendant appears to have possessed the firearm under the circumstances set forth in part I of this opinion.

In *People* v. *King* (1978) 22 Cal.3d 12, 24 [148 Cal.Rptr. 409, 582 P.2d 1000], the state's high court stated: ■ "[W]hen a member of one of the affected classes [i.e., one previously convicted of a felony] is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense continues, does not violate section 12021. As in all cases in which deadly force is used or threatened in self-defense, however, the use of the firearm must be reasonable under the circumstances and may be resorted to only if no other alternative means of avoiding the danger are available. In the case of a felon defending himself alone, such alternatives may include retreat where other persons would not be required to do so."

Although the factual context of the case before us differs somewhat, we are of the opinion that the rationale of *People* v. *King* is reasonably and equally applicable to it. We find error, in that appropriate instructions were not given in respect of the Penal Code section 12021 charge.

It is found unnecessary to consider and resolve the contention that defendant "was not advised that he was waiving his right of confrontation when he admitted a prior conviction." Such error, if error it was, will probably not recur upon a retrial.

The judgment is reversed.

Holmdahl, J., concurred.

**NEWSOM, J.,** Dissenting.—I am unable to agree with my respected colleagues that exclusion of evidence of specific acts of aggression allegedly committed by the victim and contained in probation reports was reversible error, or indeed error at all.

The thrust of Mizchele's defense was that the shooting occurred by accident. However characterized by counsel, the subject evidence amounts only to an explanation of what actuated Mizchele in attempting to disarm Nawassha—namely, a reasonable fear of her known violent propensities.

But, given that Mizchele's action in disarming Nawassha was justified, the fact remains that the weapon either discharged accidentally or it did not, and the proffered evidence seems to me only marginally, if at all, relevant to the resolution of that central issue. Also, the jury heard other, uncontradicted evidence of Nawassha's violent propensities and use of weapons, and could have been under no illusions respecting the violence of her nature.

Under these circumstances, I find no abuse of discretion under Evidence Code section 352 in the trial court's exclusionary ruling. And, finding no other material error, I would affirm the conviction.

A petition for a rehearing was denied June 2, 1983. Newsom, J., was of the opinion that the petition should be granted.