993 F.2d 884
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Irvin IBANEZ, Defendant-Appellant.
 No. 92-10277.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1993.
Decided May 13, 1993.
 
 Before: ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 ORDER
 
 1
 The Memorandum disposition filed April 13, 1993, is withdrawn. The attached Memorandum disposition is ordered filed in its place.
 
 
 2
 MEMORANDUM****
 
 
 3
 Defendant Irvin Ibanez appeals the decision of the District Court of Guam, Appellate Division, affirming the Superior Court of Guam's judgment convicting him of kidnapping, in violation of 9 Guam Code Ann. §§ 22.20(a)(2) and (3); aggravated murder, in violation of 9 Guam Code Ann. §§ 16.30(a)(1) and (2); and possession and use of a deadly weapon in the commission of a felony, in violation of 9 Guam Code Ann. § 80.37.
 
 DISCUSSION
 I.
 VIOLATION OF SPEEDY TRIAL RIGHTS
 
 4
 Ibanez argues the Appellate Division erred in finding his constitutional and statutory rights to a speedy trial were not violated. Specifically, he contends that there was no good cause for the delay between his rearraignment on March 28, 1990, and the commencement of his trial 244 days later on November 27, 1990.
 
 A. STATUTORY RIGHT TO A SPEEDY TRIAL
 1. Applicable Law
 
 5
 The Sixth Amendment right to a speedy trial is made applicable to Guam under 48 U.S.C. §§ 1421b(g) and (u), which provide respectively that the criminal accused shall have the right to a speedy trial, and that the Sixth Amendment "shall have the same force and effect" on Guam as in any State.
 
 
 6
 Guam's equivalent of the federal Speedy Trial Act (18 U.S.C. § 3161) is encoded in section 80.60(a)(2) of Title 8 of the Guam Code Annotated, which provides in relevant part that a criminal action shall be dismissed if "[t]he trial of a defendant, who is in custody at the time of his arraignment, has not commenced within forty-five (45) days after his arraignment." However, a criminal action shall not be dismissed if "[g]ood cause is shown for the failure to commence the trial within the prescribed period." 8 Guam Code Ann. § 80.60(b)(3). Thus, "good cause" periods of delay are excluded in computing the time within which the trial must commence.
 
 
 7
 This circuit holds that California cases are persuasive in circumstances where the law of Guam is unclear. Territory of Guam v. Ojeda, 758 F.2d 403, 406 (9th Cir.1985). "Where there is a question concerning the criminal or civil code provisions of Guam law, this court will rely on California law." Id.
 
 
 8
 Section 1382 of the California Penal Code, which implements the federal and state constitutional right to a speedy trial, provides: "The court, unless good cause to the contrary is shown, shall order the action to be dismissed ... when a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information...." Cal.Penal Code § 1382 ( quoted in People v. Johnson, 606 P.2d 738, 742). Inasmuch as California law parallels Guam's "good cause" exclusion, and is persuasive in circumstances where the law of Guam is unclear, see Ojeda, 758 F.2d at 406, we rely on California cases interpreting "good cause" delay.
 
 
 9
 "What constitutes good cause for the delay of a criminal trial is a matter that lies within the discretion of the trial court," Johnson, 606 P.2d at 746, and "depends on the circumstances of each case," People v. County of Ventura, 48 Cal.App.3d 1003, 1007, 122 Cal.Rptr. 267, 269 (1975) (quotation omitted). Delay caused by the conduct of the defendant, or delay arising from unforeseen circumstances, or delay that benefits the defendant have been regarded as examples of good cause. Johnson, 606 P.2d at 746.
 
 2. Discussion
 
 10
 The Appellate Division found the following blocks of time constituted excludable delay: (1) the period of time during which the court considered the Government's motion to disqualify counsel; (2) the period during which the Ninth Circuit mandate was in effect; (3) the period the court attempted to appoint counsel; (4) the period required to prepare Ibanez's mental evaluation; (5) the period Ibanez's co-counsel expressly waived right to trial; and (6) the period during which the court considered Ibanez's motion to dismiss.
 
 
 11
 a. The Period During Which the Court Considered the Government's Motion to Disqualify Counsel
 
 
 12
 Mr. Lujan's prior representation of Ibanez's brother Christopher, a self-confessed participant in the crime, created a conflict of interest because Mr. Lujan was in the position of potentially having to cross-examine and impeach a former client from whom he had received confidential information. Although Ibanez consented to Mr. Lujan's representation, Christopher had not consented to the release of confidential information. The fact that Lujan no longer represented Christopher Ibanez did not lessen the potential conflict because, under Rule 1.6(a) of the Model Rules of Professional Conduct (MRPC), Mr. Lujan's duty of confidentiality and loyalty continued even after representation was formally ended.
 
 
 13
 Under the circumstances, this conflict of interest might have been damaging to Ibanez had Mr. Lujan felt constrained by professional ethics in cross-examining Christopher or other witnesses involved in his case. Inasmuch as the disqualification of Mr. Lujan benefitted Ibanez, the period during which the trial court considered the Government's Motion to Disqualify is properly excludable under Johnson. See Johnson, 606 P.2d at 746.
 
 
 14
 b. The Period During Which The Ninth Circuit Mandate Was In Effect
 
 
 15
 The period of time during which the Ninth Circuit stay of mandate was in effect (from April 25, 1990 to July 19, 1990) was excludable due to the trial court's lack of jurisdiction. Ibanez does not contest the excludability of this period.
 
 
 16
 c. The Period During Which the Court Attempted to Appoint Counsel
 
 
 17
 Ibanez argues that the Appellate Division's exclusion of the period between April 29, 1990 and July 19, 1990, when the trial court made three futile attempts to appoint counsel, was erroneous because the trial court would never have had to appoint counsel were it not for the Government's successful disqualification of Mr. Lujan.
 
 
 18
 We find the benefit to Ibanez of having an attorney represent him brings the issue directly within Johnson 's "benefit to the defendant" holding and, therefore, this period is properly excluded. See Johnson, 606 P.2d at 746.
 
 
 19
 d. The Period Required to Complete a Psychiatric Evaluation
 
 
 20
 The Appellate Division found the ninety-day period (from August 7, 1990 to November 5, 1990) required to complete Ibanez's psychiatric evaluation to be excludable delay.
 
 
 21
 Ibanez argues the psychiatric evaluation period is not excludable based on the following theories:
 
 
 22
 i) Trial Court Improperly Ordered Mental Evaluation
 
 
 23
 Ibanez argues that Mr. Lujan had no legal authority to file a mental condition notice on April 17th because he had been disqualified from representing Ibanez the day before, on April 16th. Ibanez concludes that because his mental state was not properly before the trial court, the court had no justification for ordering the psychiatric evaluation under 9 Guam Code Ann. §§ 7.22(d) and 7.25(a). Ibanez specifically contends the Appellate Division abused its discretion in finding that Mr. Lujan was the counsel of record when he filed the Notice.
 
 
 24
 Neither Mr. Lujan, Ibanez, Mr. Perez or the Prosecutor had received notice of the disqualification at the time Mr. Lujan filed notice placing his client's mental state in issue. Because Mr. Lujan was still obligated to effectively represent Ibanez at the time he filed notice, the trial court properly recognized Mr. Lujan as counsel, see e.g., Epley v. Califro, 323 P.2d 91, 95 n. 2 (Cal.1958), and properly ordered a psychiatric examination under 9 Guam Code Ann. §§ 7.22(d) and 7.25(a).
 
 
 25
 Furthermore, Ibanez failed to withdraw or challenge Mr. Lujan's filing through any of his subsequent attorneys, which is further evidence that Ibanez intended to place his mental condition at issue.
 
 
 26
 ii) Excessive Delay in Effectuating an Evaluation
 
 
 27
 Ibanez first argues that the trial court's failure to order any examination until four months after the Lujan notice was filed constitutes excessive delay and, therefore, cannot be "good cause" for exclusion.
 
 
 28
 In an Order dated August 7, 1990, the trial court explained that "the delay in ordering the psychiatric evaluation was occasioned by a series of often confusing events that included four changes of counsel prior to the appointment of Defendant's present counsel, and the Stay of Mandate that came down on April 27, 1990."
 
 
 29
 It was in the interest of the defendant for the judge to wait until the appointment of permanent trial counsel who would be able to assist Ibanez through the psychiatric evaluation process. Thus, there was "good cause" for the delay. See Johnson, 606 P.2d at 746.
 
 
 30
 Ibanez also argues there was no "good cause" for the fifty-day delay between the trial court's second mental evaluation order (August 27, 1990) and the actual examination (October 16, 1990). We agree with the Appellate Division that Ibanez's lack of cooperation generally set into motion delays in effectuating the examination. See Johnson, 606 P.2d at 746 (delay caused by the defendant constitutes "good cause").
 
 
 31
 We conclude, therefore, this period is excludable.
 
 
 32
 e. The Period During Which Appellant Waived His Speedy Trial Rights
 
 
 33
 On August 13, 1990, Michael Phillips, Ibanez's co-counsel, appeared in court and expressly waived his client's right to a speedy trial until November 8, 1990. Section 80.60(b)(1) of Guam Code Annotated provides that time is excludable from the speedy trial statute if "[t]he action is set on a date beyond the prescribed period upon motion of the defendant or with his consent, express or implied...."
 
 
 34
 In Johnson, the Supreme Court of California interpreted an exclusionary provision essentially identical to Guam Code Ann. § 80.60(b)(1).[1] See Johnson, 606 P.2d at 744. That court held that "the consent of appointed counsel to a postponement of trial beyond the statutory period, if given solely to resolve a calendar conflict and not to promote the best interests of his client, cannot stand unless supported by the express or implied consent of the client himself." Id. In the present case, Mr. Phillips indicated he wished to postpone the trial because he was "not free" until November 8th. This reason is a "calendar conflict" within the meaning of Johnson. Thus, Mr. Phillips' waiver is ineffective unless Ibanez expressly or impliedly consented to it.
 
 
 35
 The Johnson court held that "the failure of defendant or his counsel to make timely objection to a postponement constitutes implied consent to the postponement." Id. at 744 n. 7. On August 27, 1990, two weeks after Mr. Phillips' appearance in court, Mr. Hartsock made clear to the court that the action of Phillips was not intended to constitute a waiver. TR 8/27/90 at 4. Therefore, Ibanez neither expressly nor impliedly consented to his counsel's waiver. The Appellate Division erred in finding this period excludable.
 
 
 36
 f. The Period During Which the Court Considered Ibanez's Motion to Dismiss
 
 
 37
 Ibanez does not contest the excludability of this period. See Wilcox v. Commissioner, 848 F.2d 1007, 1008 n. 2 (9th Cir.1988) ("Arguments not addressed in a brief are deemed abandoned.")
 
 4. Conclusion
 
 38
 We find that the following blocks of time constitute excludable delay:
 
 
 39
 4/3/90-4/16/90 (13 days): The period of time during which the court considered the Government's motion to disqualify counsel, from the date of the Government's motion to the date of the court's ruling.
 
 
 40
 4/25/90-7/19/90 (85 days): The period during which the Ninth Circuit mandate was in effect, from 4/25/90 to 7/9/90; and the period the court attempted to appoint counsel, from 4/29/90 to 7/19/90. The overlapping dates from 4/29/90 to 7/9/90 are single counted.
 
 
 41
 8/7/90-11/5/90 (90 days): The period required to prepare Ibanez's mental evaluation, from the date the court ordered a psychiatric evaluation (8/7/90) to the date the court conducted the competency hearing (11/5/90).
 
 
 42
 11/6/90-11/26/90 (20 days): The period during which the court considered Ibanez's motion to dismiss, from the date of motion to the court's ruling.
 
 
 43
 The period of time from Ibanez's rearraignment on March 28, 1990, to the beginning of trial on November 27, 1990, is 244 days. The number of properly excludable days is 208. The number of non-excludable days is thirty-six, leaving nine days of the statutory forty-five day period for the trial to start. Therefore, Ibanez's right to a speedy trial pursuant to 8 Guam Code Ann. 80.60 was not violated.
 
 B. CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL
 
 44
 In Klopfer v. North Carolina, 386 U.S. 213, 223 (1955), the Supreme Court established that the Sixth Amendment right to a speedy trial is fundamental. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court "promulgated standards by which the speedy trial guarantees should be judged" devising a "balancing approach in which the conduct of the government and the defendant are weighed against one another on an ad hoc basis." United States v. Graham, 538 F.2d 261, 263 (9th Cir.), cert. denied, 429 U.S. 925 (1976). The Barker Court established four factors to consider in determining whether a there has been a Sixth Amendment speedy trial violation: "the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant from the delay." United States v. Tercero, 640 F.2d 190, 193 (9th Cir.1980) (citing Barker, 407 U.S. at 530), cert. denied, 449 U.S. 1084 (1981). In determining whether a defendant has been prejudiced by the delay, a court should consider whether the accused has been incarcerated prior to trial, whether the accused has suffered anxiety and strain unduly exacerbated by the delay, and whether the defense has been impaired. Graham, 538 F.2d at 264, 265.
 
 
 45
 We find that in light of the justifiable reasons for the eight month delay and Ibanez's responsibility in causing some of the delay, the length was not impermissibly long. See Graham, 538 F.2d at 266 (twelve month delay did not violate speedy trial rights); Tercero, 640 F.2d at 195 (twenty month delay did not violate speedy trial rights). It is true that Ibanez consistently asserted his right to a speedy trial and was prejudiced by solitary confinement; however, his defense was not impaired by the delay and nothing in the record differentiates the emotional strain experienced by Ibanez from other criminal defendants. See Graham, 538 F.2d at 265.
 
 
 46
 Weighing all the Barker factors in conjunction with the facts and circumstances present here, Ibanez suffered no impairment of his Sixth Amendment right to a speedy trial.
 
 II
 ADMISSABILITY OF PHOTOGRAPHS
 
 47
 Ibanez contends that the trial court committed reversible error in admitting photographs of the victim's torso and partially decomposed skull. He argues that because of the gruesome and bloody nature of the photographs, the only purpose they could have served was to inflame the jurors, in violation of Guam's rules of evidence. See 6 Guam Code Ann. § 403.[2]
 
 
 48
 Questions arising from Guam's evidentiary laws can be determined by California cases interpreting applicable counterparts under the California Rules of Evidence. Ojeda, 758 F.2d at 406.
 
 
 49
 In People v. Seastone, 3 Cal.App.3d 60, 82 Cal.Rptr. 907 (1969), the California Court of Appeal sets forth the general rule governing the admissibility of gruesome photographs:
 
 
 50
 If the principal effect of demonstrative evidence such as photographs is to arouse the passions of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course be excluded. On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidentally arouse the passions of the jury.
 
 
 51
 Id. at 909 (quotation omitted).
 
 
 52
 The admissibility of such photographs "lies solely within the discretion of the trial judge and his ruling will not be reversed unless their probative value is clearly outweighed by their prejudicial effect." People v. Murphy, 503 P.2d 594, 603-604 (1972) (citations omitted), cert. denied, 414 U.S. 833 (1973). "It is primarily for the trial court in the exercise of its discretion to weigh the importance of putting before the jury all that may reasonably assist them in the determination of guilt against the danger that they will substitute emotion for reason as the basis of their verdict." Seastone, 3 Cal.App.3d at 65, 82 Cal.Rptr. at 909.
 
 
 53
 The photographs at issue are highly prejudicial. Therefore, we must consider whether they are probative and, if so, whether their probative value outweighs their prejudicial effect.
 
 
 54
 "[D]emonstrative evidence that tends to prove a material issue or clarify the circumstances of the crime is admissible despite its prejudicial tendency." Seastone, 3 Cal.App.3d at 65, 82 Cal.Rptr. at 910 (quotation omitted). In the present case, the evidence was probative of the following material issues:
 
 
 55
 First, the photographs provided assistance in establishing two elements of the crime. The Guam aggravated murder and kidnapping statutes under which Ibanez was convicted, and the jury was instructed, require proof of malice and proof that the victim was unlawfully removed. 9 Guam Code Ann. §§ 16.20, 22.20(a)(2).[3]
 
 
 56
 As to the element of malice, California has held that "malice may be shown by the extent and severity of the injuries inflicted upon the victim and by the condition in which the victim was left by the attacker." Seastone, 3 Cal.App.3d at 65, 82 Cal.Rptr. at 910. In the present case, the photograph depicting the multiple stab wounds to the body demonstrates the severity of the attack, and the photograph depicting the location of the head in the foliage shows the condition in which the victim was left. The photographs are therefore probative of the element of malice. See also, People v. Hawkins, 76 Cal.App.3d 714, 720, 143 Cal.Rptr. 106, 109 (1978) (photographs showing the manner in which victims were killed, the condition of the bodies when police arrived, and the nature of wounds inflicted are highly probative of the issue of malice). As to the element of unlawful removal, the photographs are probative because they show possible signs of struggle and that the body was found a substantial distance from where the victim was abducted.
 
 
 57
 California courts have also held gruesome photographs "relevant evidence for the purpose of clarifying medical testimony." People v. Willis, 104 Cal.App.3d 433, 451, 163 Cal.Rptr. 718, 728, cert. denied, 449 U.S. 877 (Cal.Ct.App.1980). In the present case, some of the photographs at issue were introduced during the testimony of Dr. Hee Yong Park, the autopsy surgeon. Ibanez argues that the photographs were not necessary to clarify Dr. Park's testimony because he had already stated all his observations and conclusions. However, in Murphy, the court expressly held that photographs were probative where they "tended to clarify the testimony of the autopsy surgeon regarding the precise location of the wounds." 503 P.2d at 605. In the present case, Dr. Parks used the photographs to explain the location of Pierce's stab wounds. (Trial Transcript VI at 49-51.) Therefore, the photographs were probative under the standards set forth in Murphy.
 
 
 58
 Balancing the effect of the photographs, and keeping in mind the deferential standard of review, we find the experienced trial judge and three-member appellate panel did not abuse their discretion in holding the probative value of the photographs outweighed any prejudicial effect.
 
 III
 JURY INSTRUCTIONS
 
 59
 Ibanez argues the trial court committed reversible error by instructing the jury that it could infer Ibanez's consciousness of guilt if it found that he had suppressed evidence.
 
 
 60
 Consciousness of guilt instructions must be supported by a logical chain of inferences. See, e.g., United States v. Feldman, 788 F.2d 544, 555 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987). Ibanez's act of shaving all his bodily hair shortly after learning of the court order compelling him to submit hair samples for analysis creates a logical, uninterrupted inference that he intended to suppress evidence against himself.
 
 
 61
 Ibanez argues the chain of inference is broken because there was no proof that he destroyed the evidence (i.e., the hair). However, the jury instruction did not require that the evidence be destroyed, merely suppressed. The instruction's reference to the destruction of the evidence was simply an example of suppression, not a requirement for finding that suppression occurred.
 
 
 62
 Ibanez's arguments that he cut his hair because of lice and provided blood and saliva samples without resistance pertain to the reasonableness of the inference, not to the appropriateness of the instruction. The jury was carefully instructed about drawing inferences, and had ample opportunity to consider the weight and significance of Ibanez's arguments.
 
 
 63
 Ibanez's reliance on People v. Mizchele, 142 Cal.App.3d 686, 191 Cal.Rptr. 234 (Cal.Ct.App.1983) is misplaced. In Mizchele, the defendant placed the evidence (a gun) in a shoe box in the closet. Id. 142 Cal.App.3d at 692, 191 Cal.Rptr. at 248. In overturning the conviction on other grounds, the court suggested that upon retrial the jury instruction (CALJIC 2.06) be modified to state that the defendant's act might reasonably create an inference of suppression, but not destruction, of evidence. Id. No such modification is appropriate here because, unlike the defendant in Mizchele, there is no suggestion that Ibanez preserved the evidence.
 
 
 64
 We conclude the jury instruction was in proper.
 
 CONCLUSION
 
 65
 We agree with the Appellate Division's holdings that Ibanez's right to a speedy trial was not violated; that the probative value of the photographs of the victim outweighed their prejudicial effect; and, that the trial court's consciousness of guilt instruction was proper.
 
 
 66
 AFFIRMED.
 
 
 
 *
 The Honorable William C. Canby, Jr., Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 **
 The Honorable william B. Enright, Senior Judge, United States District Court for the Southern District of California, sitting by designation
 
 
 ***
 The Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, sitting by designation
 
 
 ****
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The applicable California statute provides that an action shall not be dismissed for violation of California's speedy trial statute if:
 [t]he defendant requests or consents to the setting of a trial date beyond the 60-day period. Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter.
 Cal.Penal Code § 1382(B).
 
 
 [2]
 6 Guam Code Ann. § 403, essentially the same as Fed.R.Evid. 403 and Cal.Evid.Code § 352, provides:
 Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [3]
 Criminal Homicide is defined in 9 Guam Code Ann. § 16.20 as follows:
 (a) a person is guilty of criminal homicide if he causes the death of another human being:
 (1) intentionally and with premeditation; or
 (2) intentionally; or
 (3) knowingly; or
 (4) recklessly; or
 (5) by criminal negligence.
 (b) Criminal homicide is aggravated murder, murder, manslaughter or negligent homicide.
 Aggravated Murder is defined in 9 Guam Code Ann. § 16.30(a)(1) as follows:
 (a) Criminal homicide constitutes aggravated murder when:
 (1) it is committed intentionally with premeditation....
 Kidnapping is defined in 9 Guam Code Ann. § 22.20(a)(2) as follows:
 (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found; or if he unlawfully confines another for a substantial period, with any of the following purposes:
 * * *
 (2) to facilitate commission of any felony or flight thereafter....